## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **GREGORIA GALVAN,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | **CIV-17-** 282-F |
| **v.** | | ) | |
| | | ) | |
| 1. | **MIDWEST GERIATRIC** | ) | |
| | **MANAGEMENT, LLC, a/k/a** | ) | |
| | **MGM HEALTHCARE d/b/a** | ) | |
| | **SOUTH POINTE** | ) | |
| | **REHABILITATION & CARE** | ) | |
| | **CENTER, and** | ) | |
| 2. | **SOUTH PARK HEALTH CARE,** | ) | |
| | **LLC, d/b/a SOUTH POINTE** | ) | |
| | **REHABILITATION AND CARE** | ) | |
| | **CENTER,** | ) | |
| | | ) | **ATTORNEY LIEN CLAIMED** |
| | **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Gregoria Galvan, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.    Plaintiff Gregoria Galvan is an adult female resident of Oklahoma County, Oklahoma.

2.    Defendants are:

a)    Midwest Geriatric Management, LLC, a/k/a MGM Healthcare, d/b/a South Pointe Rehabilitation and Care Center, an entity doing business in Oklahoma County, Oklahoma; and

b)      South Park Health Care, LLC, d/b/a South Pointe Rehabilitation and

Care Center, an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with

Defendants and is based on: (a) race discrimination in violation of 42 U.S.C. §1981; (b)

interference with and retaliation for Plaintiff having used and/or attempted to use leave under

the Family Medical Leave Act ("FMLA"); (c) violations of her rights under the Employee

Retirement Income Security Act ("ERISA"); (d) violations of her rights under the

Consolidated Omnibus Budget Reconciliation Act ("COBRA"); (e) failure to pay wages in

violation of the Fair Labor Standards Act ("FLSA") and Oklahoma state law, and (f) breach

of contract.[1]

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.

§1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law

claims as they arise out of the same core of operative facts as the federal claims and

jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.      All of the actions complained of herein occurred in or around Oklahoma

County, Oklahoma.  Defendants are doing business in said county and may be served in said

county.  Oklahoma County is located within the Western District of the United States District

---

[1] On or about November 29, 2016, Plaintiff filed a Charge of Discrimination against Defendants based on violations of Title VII, the ADEA and ADA/ADAAA.  Plaintiff plans to file an Amended Complaint adding said claims once they have been fully exhausted.

Court of Oklahoma, wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6.      Plaintiff, who is Hispanic and was born in May 1972, began her employment with Defendants in or around 2006 as a Certified Nurses Aide.

7.      Throughout her employment, Plaintiff was consistently recognized as a satisfactory or better employee.  She consistently received positive performance evaluations and merit pay increases.

8.      Despite her stellar work record, Plaintiff was fired by Human Resources Director Dionisia Ompad, who is Caucasian, on or about March 18, 2016, just weeks after Plaintiff had been hospitalized and diagnosed with non-contagious Hepatitis, requiring Plaintiff to be absent from work.

9.      More particularly, Plaintiff (who typically worked Monday through Friday, 7:00 a.m. to 3:00 p.m.) was admitted to the hospital on or about Sunday, February 21, 2016.

10.      The following morning, on or about Monday, February 22, 2016, before Plaintiff's scheduled shift Plaintiff spoke with Scheduler Michelle (Last Name Unknown) and reported that she was admitted to the hospital the previous evening (i.e., the evening of February 21, 2016) and would be absent from work that day (i.e., February 22, 2016).

11.      At that time, Michelle told Plaintiff that Plaintiff needed to be at work and demanded to know when Plaintiff would return.  Plaintiff explained she was unaware at that time when she would be released from the hospital, but assured Michelle that she would

follow up with additional information as soon as she received the same.

12.     On or about the evening of Monday, February 22, 2016, Plaintiff again spoke with Michelle to advise that Plaintiff's physicians had not yet informed Plaintiff as to when Plaintiff would be released, and she therefore anticipated she would also be absent from work the next day (i.e., Tuesday, February 23, 2016).  Michelle told Plaintiff that she would take Plaintiff off the schedule until Plaintiff was released.

13.     Plaintiff was initially released from the hospital on or about Saturday, February 27, 2016, but again fell ill on or about Sunday, February 28, 2016, and was readmitted to the hospital on or about Monday, February 29, 2016, after her physician conducted laboratory analyses and determined that Plaintiff's condition had deteriorated.

14.     Plaintiff was ultimately released from the hospital on or about the evening of Friday, March 4, 2016.  She then had a doctor's appointment on or about the morning of Monday, March 7, 2016, at which time her physician provided her with a release to return to work on or about April 11, 2016.

15.     On or about the same day (i.e., Monday, March 7, 2016), Plaintiff presented the medical release to Human Resources Director Dionisia Ompad who provided Plaintiff with FMLA paperwork to be completed.

16.     On or about March 15, 2016, Plaintiff returned the completed FMLA paperwork to Ompad which reflected that Plaintiff had been diagnosed with non-contagious Hepatitis.

17.     Upon presenting Ompad with her FMLA paperwork, Ompad stated that Plaintiff had been fired because, pursuant to corporate policy, an employee's position is only held open for thirty (30) days.

18.     Significantly, however, Plaintiff had not been absent thirty (30) days at that time (February 22, 2016 to March 15, 2016).

19.     Traumatized by just having been fired, Plaintiff left the workplace and returned home, at which time she informed her sister of her termination and of the reason Ompad gave for the adverse action taken.

20.     Upon doing so, Plaintiff's sister accompanied Plaintiff back to Plaintiff's workplace on or about March 15, 2016 to speak with Ompad.

21.     Plaintiff's sister told Ompad that it was her understanding that Ompad fired Plaintiff.  Ompad admitted this, reiterating that pursuant to corporate policy, an employee's position is only held open for thirty (30) days.

22.     Ompad further stated that although Plaintiff had not been absent for thirty (30) days, Ompad had spoken with corporate who advised that because Plaintiff had been absent for close to thirty (30) days, Plaintiff should be terminated.

23.     Upon pressing Ompad for a copy of the purported policy, Ompad retracted her statement and admitted that upon viewing the policy again, employees may be absent up to six (6) months.

24.     Ompad then told Plaintiff and Plaintiff's sister that she (Ompad) would contact

corporate to resolve the matter.  And, although Plaintiff had already returned her FMLA paperwork, Ompad asked Plaintiff to again have her physician complete FMLA paperwork, stating that she (Ompad) could not find the FMLA paperwork Plaintiff returned just hours before.

25.    On or about March 18, 2016, Plaintiff returned (for the second time) the FMLA paperwork to Ompad.

26.    At the same time, Plaintiff told Ompad that in attempting to obtain some prescription medications for her medical condition, Plaintiff was advised that her health insurance had been cancelled because Plaintiff had been terminated.

27.    Plaintiff told Ompad that she was confused, as it was her understanding that she had not been fired.  However, Ompad said that while she had been wrong about the 30-day policy, Plaintiff was still terminated.

28.    Ompad alleged that Scheduler Michelle had fired Plaintiff back on February 19, 2016 because Plaintiff was allegedly a no-call/no-show on that date.  However, this new reason for Plaintiff's termination was also false.

29.    In fact, Plaintiff had actually worked on Friday, February 19, 2016.  And, Defendants' work records establish this is so.

30.    Moreover, no one had told Plaintiff that Scheduler Michelle had allegedly fired Plaintiff on February 19, 2016 until Ompad told her on or about March 18, 2016.

31.    And, Scheduler Michelle did not sign the termination document, Ompad did.

32.     Upon information and belief, Plaintiff was replaced by a non-Hispanic individual.

33.     At the time of her termination, Plaintiff was eligible for insurance continuation benefits under COBRA, in that, Defendants are a covered employer having more than twenty (20) employees during each week of the calendar preceding and during the year of Plaintiff's termination.  Defendants provided health insurance benefits, and Defendants were, at that time, to Plaintiff's knowledge and belief, the administrator of the health insurance plan.

34.     Plaintiff's termination of employment was a qualifying event for the purpose of COBRA rights entitling Plaintiff to notice of her rights of benefits of continuation and the opportunity to elect such continuation.

35.     Despite the fact that Plaintiff was eligible for and entitled to COBRA benefits, Defendants neither provided notice of such rights nor the opportunity to secure benefits. Such failure was a willful violation of Plaintiff's rights, in that, Defendants had specific knowledge of Plaintiff's medical condition and need for benefits and entitlement to benefits.

36.     Defendants also failed to pay Plaintiff her accrued, unused paid time off, despite Defendants having agreed to do so pursuant to an established policy.

37.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries as described below.

## COUNT I:  42 U.S.C. § 1981

For her first cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

38.     The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination.

39.     Plaintiff is entitled to relief because she is Hispanic American, was qualified for her job, was terminated, and her position was not eliminated after her termination.

40.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

41.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT II: FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42.     The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in contradiction of the Family Medical Leave Act.

43.     Plaintiff was entitled to medical leave because she suffered from a serious health condition (non-contagious Hepatitis, requiring inpatient care, as well as continuous medical treatment) and worked for Defendants, entities with more than 50 employees within

a 75 mile radius, for more than one (1) year and for more than 1,250 hours within the one

year prior to her need for leave.

44.      Defendants interfered with Plaintiff's rights under the FMLA by *inter alia*

terminating her employment in the midst of her taking FMLA qualified leave, thereby

denying Plaintiff a benefit to which she was entitled to under the FMLA.

45.      Defendants also retaliated against Plaintiff for using FMLA qualifying leave

by terminating her, *inter alia.*

46.      As a direct and proximate result of Defendants' actions, Plaintiff has suffered

injuries and is entitled to recover of all damages or other relief allowed by the FMLA,

including but not limited to, lost wages (past and future), liquidated damages (based on

Defendants' willful conduct), and attorneys' fees and costs.

## COUNT III: ERISA

For her third cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

47.      The matters alleged above constitute interference with Plaintiff's rights

protected by ERISA.

48.      Defendants are prohibited from discharging or otherwise discriminating against

a plan participant "for the purposes of interfering with the attainment of any right to which

such participant may become entitled under the plan."  29 U.S.C. §1140.

49.      Plaintiff is entitled to relief because Defendants engaged in prohibited conduct

(i.e., Plaintiff's termination), Defendants engaged in such conduct for the purpose of retaliating and interfering with Plaintiff's ERISA-protected rights.

50.     As a result, Plaintiff has sustained loss and damages.

51.     As damages, Plaintiff seeks all damages available under federal law, including

## COUNT IV: COBRA

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

52.     The matters alleged above constitute a violation of Plaintiff's rights protected by COBRA.

53.     Plaintiff is entitled to relief because Defendants failed to provide timely notice of her rights under COBRA and denied Plaintiff the opportunity to secure such benefits, thereby violating Plaintiff's rights under COBRA.

54.     As damages, Plaintiff is entitled to compensation for benefits, medical expenses incurred and all other damages, including but not limited to civil penalties allowed by law, including attorneys' fees and costs.

## COUNT V: UNPAID WAGES

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

55.     The acts described above constitute violations of the Fair Labor Standards Act and Okla. Stat. tit. 40 § 165.3 for failure to pay wages.

56.     Defendants failed to pay Plaintiff her accrued, unused paid time off, despite Defendants having agreed to do so pursuant to an established policy.

57.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff suffered a loss of income and other damages.  As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

58.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA and Oklahoma state law.  Defendants knew or showed reckless disregard for the fact that its compensation practices were in violation of these laws.

## COUNT VI: BREACH OF CONTRACT

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

59.     Defendants failed to pay Plaintiff her accrued, unused paid time off, despite Defendants having agreed to do so pursuant to an established policy.

60.     Such conduct constitutes a breach of Defendants' policies, procedures and implied contract with Plaintiff.

61.     As damages, Plaintiff is entitled to the loss of all amounts not paid, as well as all consequential and incidental damages, compensatory damages, punitive damages and attorneys' fees and costs allowed by state law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of

the Plaintiff and against Defendants and award compensatory damages, liquidated damages,

punitive damages, together with any appropriate equitable relief, pre- and post-judgment

interest, costs and attorney's fees.

Respectfully submitted this 14th day of March, 2017.

> s/Jana B. Leonard
> JANA B. LEONARD, OBA # 17844
> SHANNON C. HAUPT, OBA #18922
> LEONARD & ASSOCIATES, P.L.L.C.
> 8265 S. WALKER
> OKLAHOMA CITY, OK 73139
> (405) 239-3800 [TELEPHONE]
> (405) 239-3801  [FACSIMILE]
> leonardjb@leonardlaw.net
> haupts@leonardlaw.net
> JURY TRIAL DEMANDED
> ATTORNEY LIEN CLAIMED